## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAS) PRODUCTS LIABILITY LITIGATION | MDL NO. 3094<br><br>THIS DOCUMENT RELATES TO ALL CASES<br><br>JUDGE KAREN SPENCER MARSTON |
| GREGORY B. JACKSON,<br>                    Plaintiff,<br><br>v.<br><br>NOVO NORDISK, INC.; NOVO NORDISK A/S,<br>                    Defendant(s). | COMPLAINT AND JURY DEMAND<br><br>CIVIL ACTION NO.: 2:25-cv-07366 |

## SHORT FORM COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff named below, by and through the undersigned counsel, file(s) this *Short-Form Complaint and Demand for Jury Trial* against the Defendants selected below. Plaintiff adopts and incorporates by reference the allegations, claims, and the relief sought in *Plaintiffs' Amended Master Long Form Complaint and Demand for Jury Trial (ECF 481) ("Master Complaint")*, and any subsequent amended versions of such *Master Complaint*, filed in *In Re: Glucagon-Like Peptide-1 Receptor Agonists (GLP-1 RAs) Products Liability Litigation*, MDL No. 3094 in the United States District Court for the Eastern District of Pennsylvania, as it relates to the selected Defendants and Causes of Action. Plaintiff files this *Short-Form Complaint* as permitted by Case Management Order ("CMO") No. 27 (ECF 503).

## <u>IDENTIFICATION OF PARTIES</u>

**<u>Plaintiff(s)</u>**

1.    Full (first, middle, and last) name of Plaintiff injured/deceased due to use of GLP-1 RA Product(s): _____Gregory B. Jackson_____.

2.    If applicable, full name(s) and representative capacity of Plaintiff(s) alleging wrongful death claim: _____N/A_____, as _____ of the estate of _____, deceased.

3.    If applicable, full name(s) of Plaintiff(s) alleging survival claims, as permitted under state law(s): _____N/A_____.

4.    If applicable, full name(s) of Plaintiff(s) alleging loss of consortium or loss of services: _____N/A_____.


**<u>Defendant(s)</u>**

5.    Plaintiff(s)/Decedent's Representative is/are suing the following Defendant(s) (check all that apply):

        __X__ Novo Nordisk Inc.

        __X__ Novo Nordisk A/S

        _____ Eli Lilly and Company

        _____ Lilly USA, LLC

        _____ other(s) (identify): _____

## JURISDICTION AND VENUE

6.    City and state of Plaintiff's current residence (or in a case brought on behalf of a Decedent, Decedent's last permanent residence):

Plaintiff is a citizen of the United States, a citizen of the State of Georgia, and a resident of the city of Camilla, Georgia.

7.    State where Plaintiff was prescribed the GLP-1RA Product(s) at issue:

Plaintiff's physician(s) prescribed Victoza and Ozempic that was used by Plaintiff in Georgia.

8.    State of Plaintiff's residence at time of his use of the GLP-1RA Product(s) at issue:

Plaintiff  was a citizen of the State of Georgia at the time of his GLP-1 RA use.

9.    City and state of Plaintiff's residence at time of diagnosis of injury:

Plaintiff resided in Camilla, Georgia at the time of the diagnosis of his injur(ies).

10.    Jurisdiction is based on:

   _X_    diversity of citizenship pursuant to 28 U.S.C. § 1332

   _____    other (plead in sufficient detail as required by applicable rules):

   _____

   _____

   The District Court(s) where Plaintiff(s) might have otherwise filed this Short Form Complaint, absent this Court's CMO No. 14, and/or to where remand could be ordered:

11.    The District Court(s) where Plaintiff(s) might have otherwise filed this Short Form Complaint absent this Court's CMO No. 14, and/or to where remand could be order

United States District Court for the Middle District of Georgia

12.     Venue is proper in the District Court identified in Paragraph 11 because:

    __X__     a substantial part of the events and omissions giving rise to Plaintiff(s)'

claims occurred there

    _____     other (plead in sufficient detail as required by applicable rules):

_____

_____

13.     If applicable, identify the citizenship of any additional Defendant(s) named above:

N/A_____.

## **PRODUCT USE**

14.     Plaintiff/Decedent used the following GLP-1 RA Product(s) for which claims are

being asserted in this case (check all that apply):

    __X__     Ozempic (semaglutide)

    _____     Wegovy (semaglutide)

    _____     Rybelsus (oral semaglutide)

    __X__     Victoza (liraglutide)

    _____     Saxenda (liraglutide)

    _____     Trulicity (dulaglutide)

    _____     Mounjaro (tirzepatide)

    _____     Zepbound (tirzepatide)

    _____     Other(s) (specify): _____

4

15.     To the best of Plaintiff's knowledge, Plaintiff used GLP-1 RA Product(s) during the following approximate date range(s) (month(s) and year(s)) (if multiple products, specify date range(s) for each product):

> Plaintiff used Victoza, manufactured by Novo Nordisk A/S, et al., from in or about June 2017. Plaintiff then began using Ozempic, also manufactured by Novo Nordisk A/S, et al., from in or about May 2021 through March 2023.

.     **INJURIES AND DAMAGES**

16.     To the best of Plaintiff(s)' knowledge, as a result of using GLP-1 RA Product(s), Plaintiff/Decedent suffered the following injuries, including their sequelae (check all that apply):

_____ Gastroparesis

__X__ Other gastro-intestinal injuries (specify):

> Abdominal pain, nausea, gastroesophageal reflux disease (GERD),

_____ Ileus

_____ Ischemic Bowel/Ischemic Colitis

_____ Intestinal Obstruction

_____ Necrotizing Pancreatitis

__X__ Gallbladder Injury (specify): Cholecystectomy performed February 28, 2023

_____ Micronutrient Deficiency

_____ Wernicke's encephalopathy

_____ Aspiration

_____ Death

_____ Additional/Other(s) (specify): _____

17.     Plaintiff's injuries occurred in approximately (month and year)?

Plaintiff was prescribed and began using Victoza in approximately June 2017. At a May 2021 doctor's appointment Plaintiff's physician suggested replacing Victoza with Ozempic to treat his diabetes and for weight loss. Plaintiff agreed and his physician prescribed the same, leading to Plaintiff's purchasing and using Ozempic. Plaintiff's physician noted later that the use of Ozempic caused Plaintiff abdominal pain and elevated his enzymes. On February 28, 2023, a cholecystectomy was performed to remove Plaintiff's gallbladder. A short period thereafter, he discontinued use of Defendants' GLP-1 RA Product.

18.     In addition, as a result of Plaintiff's use of GLP-1 RA Product(s), Plaintiff suffered personal and economic injuries, pain and suffering, emotional distress, mental anguish, and the following damages (check all that apply):

    __X__ Injury to self

    _____ Injury to person represented

    __X__  Economic loss

    _____ Wrongful death

    _____ Survivorship

    _____ Loss of services

    _____ Loss of consortium

    _____ other(s) (specify): _____

## CAUSES OF ACTION

19.     In addition to adopting and incorporating by reference the *Master Complaint* as stated above, more specifically, Plaintiff hereby adopts and incorporates by reference the following Causes of Action and allegations asserted in the *Master Complaint* (check all that apply):

_____    Count I:     Failure to Warn – Negligence

_____    Count II:    Failure to Warn – Strict Liability

_____    Count III:   Breach of Express Warranty/Failure to Conform to
                       Representations

_____    Count IV:    Breach of Implied Warranty

__X__    Count V:     Fraudulent Concealment/Fraud by Omission
                       _See_ Exhibit "A" regarding Count V

__X__    Count VI:    Fraudulent/Intentional Misrepresentation
                       _See_ Exhibit "A" regarding Count VI

_____    Count VII:   Negligent Misrepresentation/Marketing

_____    Count VIII:  Strict Product Liability Misrepresentation/Marketing

_____    Count IX:    Innocent Misrepresentation/Marketing

__X__    Count X:     Unfair Trade Practices/Consumer Protection (see below)
                       _See_ Exhibit "B" regarding Count X

_____    Count XI:    Negligence

_____    Count XII:   Negligent Undertaking

__X__    Count XIII:  State Product Liability Act ("TPLA") (see below)

_____    Count XIV:   Wrongful Death

_____    Count XV:    Loss of Consortium

_____    Count XVI:   Survival Action

_____    Other(s) (specify, and on separate pages, plead additional facts supporting
                       any above claim in sufficient detail as required by applicable rules):

_____

20.     If Plaintiff is asserting a claim pursuant to the unfair trade practices or consumer

protection statutes of any jurisdiction as identified in Count X above:*

        a.    Indicate the specific statute (including subsections) under which Plaintiff is

              bringing such claims:

              Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"). Plaintiff

brings claims under O.C.G.A. §§ 10-1-372(a)(2), (5), (7), (9), (12); O.C.G.A. §
10-1-373; O.C.G.A. §§ 10-1-393(5), (7), (9); O.C.G.A. § 10-1-399; § 10-1-420.
Plaintiff also brings claims under the Georgia Fair Business Practices Act
("Georgia FBPA"), O.C.G.A. § 10-1-390, et seq., bringing claims more
specifically under O.C.G.A. § 10-1-391 (Purpose and construction of part); §
10-1-392 (Definitions; when intentional violation occurs); § 10-1-393(a), §§
10-1-393(b)(2), (b)(3), (b)(5), (b)(7), (b)(9) (Unfair or deceptive practices in
transactions unlawful). Additionally, see Plaintiffs' *Master Complaint,* Count
X, paragraphs 850-865. Defendants misled consumers and Plaintiff's physician
regarding the safety and risks associated with the use of their GLP-1 RA
Product(s) by overstating the benefits and downplaying the risks from using
their products. Plaintiff incorporates Exhibit "B."

b.  Identify the factual allegations supporting those claims (by subsection, if
    applicable):

    Defendants misled consumers regarding the safety and risks associated with use
    of their GLP-1 RA Product(s) by overstating benefits and understating risks
    from using the Product(s). Defendants' Victoza-related national television
    commercials included characters stating the Product was "better than leading
    branded injectables – the one I used to use" and "while it isn't for weight loss,
    Victoza may help you lose some weight." Defendants' commercials further
    focused on the fact that rather than increasing risks, Victoza reduced
    cardiovascular risks and that using Victoza can "lower your risk for heart attack,
    stroke or death." Defendants' "Oh, Oh, Oh" television commercials which

touted weight loss with the use of Defendants' GLP-1 RA Product while stating

there was "no increased risk" were seen by Plaintiff prior to his use of Ozempic.

Each of these commercials, promoted weight loss while informing potential

users there would be "no increased risk," providing consumers, including

Plaintiff, a sense of safety in purchasing and using the GLP-1 RA Product.

Plaintiff incorporates Exhibit "B."

*Plaintiffs asserting any such claims are on notice that "failure to identify [these claims] with the requisite specificity will result in the short form complaint being stricken with only one opportunity to amend." Opinion (ECF 465) at 74 n.33.*

21.    If Plaintiff is asserting a claim pursuant to the Product Liability Act ("PLA") of

any jurisdiction as identified in Count XIII above:*

    a.    Indicate the specific statute (including subsections) under which Plaintiff is

bringing such claims:

The Georgia Product Liability Act ("GPLA") is not one single act. Instead,

Georgia law governs product liability through its common law and statutes,

primarily focusing on strict liability and negligence, where manufacturers are

liable for injuries from defective products (design, manufacturing, failure to

warn) under principles like those in the Official Code of Georgia Annotated,

Section 51-1-11 ("OCGA § 51-1-11") and OCGA § 51-1-11.1, holding

sellers/manufacturers responsible without needing to prove negligence if the

product is unreasonably dangerous. Plaintiff brings his claim under OCGA §

51-1-11 and OCGA § 51-1-11.,1as well as those common law claims which

are subsumed by the GPLA.

    b.    Identify the legal theories identified in Paragraph 19 above (*e.g.*, negligent

failure to warn, fraud, etc.) that are subsumed within Plaintiff's PLA claim:

9

The legal theories identified in Paragraph 19 above that are subsumed within Plaintiff's PLA claim include the following causes of action: Failure to Warn – Negligence (Count I), Failure to Warn - Strict Liability (Count II), Breach of Express Warranty/Failure to Conform to Representation (Count III), Breach of Implied Warranty (Count IV), Negligent Misrepresentation/Marketing (Count VII), Strict Product Liability Misrepresentation/Marketing (Count VIII), Innocent Misrepresentation/Marketing (Count IX), Negligence (Count XI), and Negligent Undertaking (Count XII).                                                    .

c.  Identify the factual allegations supporting those claims:

Defendants as both sellers and manufacturers of the GLP-1 RA Product(s) produced defective Product(s) that were inherently unsafe and known to be unsafe to the ordinary consumer, and which Defendants knew could have been designed to be safer, and that would cause injury as produced and sold. Defendants also failed to provide adequate warnings or information with regard to their product and misled consumers, including Plaintiff, as well as consumer's physicians regarding the safety and risks associated with use of their GLP-1 RA Product(s) by overstating benefits and understating risks from using the Product(s). Plaintiff was prescribed and began using Defendants' GLP-1 RA Product Victoza in or about June 2017. In May 2021, Plaintiff was still taking Victoza and making efforts to lose weight. Defendants' television commercials, with their memorable "Oh, Oh, Oh, Ozempic!" tune discussed weight loss and stated the medication presented "no increased risk." Plaintiff's physician prescribed Ozempic to Plaintiff and Plaintiff purchased and used

Defendants' GLP-1 RA Product(s). On February 27, 2023, Plaintiff was hospitalized and a cholecystectomy was performed February 28, 2023. He discontinued his use of Ozempic shortly thereafter.

In addition, Plaintiff incorporates the following paragraphs from the *Master Complaint* (ECF 481) by reference:

Count I:    Failure to Warn – Negligence (paragraphs 606-640)

Count II:   Failure to Warn – Strict Liability (paragraphs 641-674)

Count III:  Breach of Express Warranty/Failure to Confirm to Representations (paragraphs 675-698)

Count IV:  Breach of Implied Warranty (paragraphs 699-720)

Count V:   Fraudulent Concealment/Fraud by Omission (paragraphs 721-779)

Count VI:  Fraudulent/Intentional Misrepresentation (paragraphs 780-800)

Count VII: Negligent Misrepresentation/Marketing (paragraphs 801-824)

Count VIII: Strict Product Liability Misrepresentation/Marketing (paragraphs 825-848)

Count IX:  Innocent Misrepresentation/Marketing (paragraph 849)

Count X:   Unfair Trade Practices/Consumer Protection (paragraphs 850-865) (see below)

Count XI:  Negligence (paragraphs 866-880)

Count XII – Negligent Undertaking (paragraphs 881-903)

Count XIII: - State Product Liability Acts (paragraphs 904-911)

See also the Factual Allegations Section of the *Master Complaint*.

*\* Plaintiffs asserting any such PLA claims are on notice that "failure to identify the PLA claims with the requisite specificity will result in the short form complaint being stricken with only one opportunity to amend." Opinion (ECF 465) at 76 n.35.*

22.    If pre-suit notice is required by statute, did Plaintiff provide some form of separate pre-suit notice to Defendant(s)?  __N/A__ .  If so, attach such notice.

## **RELIEF**

Plaintiff prays for relief and judgment against Defendants of compensatory damages, punitive and/or exemplary damages, interest, costs, attorneys' fees, and such further relief as the Court deems equitable and just, and as set forth in the *Master Complaint*, as appropriate, and any additional relief to which Plaintiff may be entitled.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury as to all claims triable by jury in this action.


Date:  __December 29, 2025__          By:  _____

Kristie M. Hightower (LA Bar #31782
Lundy, LLP
501 Broad Street
Lake Charles, LA 70601
khightower@lundyllp.com
T: (337) 439-0707
F: (337)439-0707

*Counsel for Plaintiff*

# EXHIBIT A

## FRAUD SUPPLEMENT - COUNTS V & VI

1.     Plaintiff incorporates by reference the factual allegations in the *Plaintiffs' Amended Master Long Form Complaint and Demand for Jury Trial* (ECF 481) *("Master Complaint")*, including its paragraphs 721-779 (Count V) and 780-800 (Count VI), as though set forth fully at length herein.

2.     Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the GLP-1 RA Products used by Plaintiff.

3.     At all relevant times, Defendants had a duty to accurately and truthfully represent the known risks and benefits of their GLP-1 RA Products to Plaintiff and his prescribing physicians.

4.     Defendants knew or should have known their GLP-1 RA Products were unreasonably dangerous and had gastrointestinal adverse effects that were of a greater severity, intensity, frequency, and duration than represented.

5.     Defendants knew their representations regarding the drugs' safety, efficacy, and side-effect profile were material to the decisions of patients and prescribers.

6.     Despite this knowledge, Defendants intentionally and knowingly made false and material misrepresentations and concealed material facts with the intent to mislead and induce Plaintiff and his prescribing physicians to use and prescribe the GLP-1 RA Products.

### Count V: Fraudulent Concealment / Fraud by Omission

7.     Defendants, having a duty to disclose, intentionally concealed and omitted the following material facts, thereby creating a false and misleading impression of the GLP-1 RA Products upon which Plaintiff and/or Plaintiff's prescribing physician justifiably relied:

a.  Risk of GI Injuries: Concealing the true risk of persistent and debilitating gastrointestinal conditions, severe vomiting, and nausea, and cholelithiasis and the need for gallbladder removal.

b.  Inadequate Gastric Emptying Tests: Concealing that representations of a "minor" gastric delay were based on inadequate testing (e.g., the acetaminophen absorption test, which only measures liquid emptying) and that Defendants knew or should have known this testing did not reflect the drug's true impact on solid food digestion.

c.  Misleading Clinical Trial Data: Concealing the fact that clinical trial participants were frequently treated with anti-emetic medications (anti-nausea drugs) to manage GI side effects, thereby skewing the data and making the "mild to moderate" side effect profile reported in marketing materials false and misleading.

d.  Misleading and/or Inadequate Data: Concealing the fact that if the use of Defendants' GLP-1 RA Product is discontinued, blood sugar levels will likely rise, and can even become higher than they were before starting the medication.

e.  "Bogus" Weight-Loss Claims (Rebound Effect): Concealing that patients are highly likely to regain the weight after discontinuing the drug, and that maintaining any weight loss requires lifelong, continuous use of the medication.

f.  "Bogus" Weight-Loss Claims (Muscle Loss): Concealing that a significant portion of the total weight lost is often lean muscle mass, not just fat, which

can lead to negative health outcomes.

8.      As a result of Defendants' fraudulent concealment and misrepresentations, Plaintiff suffered bodily injuries and economic and other losses, including pain and suffering, loss of a normal life, and medical expenses, and is entitled to recover compensatory, exemplary, and/or punitive damages. Plaintiff justifiably relied on Defendants' misrepresentations and omissions. Plaintiff was ignorant of the facts related to Defendants' Product(s) and did not have an equal opportunity to discover them. If Plaintiff had known the information Defendants withheld and concealed, Plaintiff would not have purchased or used the GLP-1 RA Products.

9.      As a result of Defendants' fraudulent concealment and misrepresentations, Plaintiff suffered bodily injuries and economic and other losses, including pain and suffering, loss of a normal life, and medical expenses, and is entitled to recover compensatory, exemplary, and/or punitive damages.

**Count VI: Fraudulent / Intentional Misrepresentation**

10.      Defendants made the following affirmative and material misrepresentations, which were false when made and upon which Plaintiff and/or Plaintiff's prescribing physician justifiably relied:

        a.  Defendants made representations in widespread direct-to-consumer advertising (including television commercials and product websites) that patients using a Novo Nordisk GLP-1 RA could "lose weight and keep it off." These representations were false and misleading because Defendants knew and concealed the material facts that (1) patients are highly likely to regain the weight after discontinuing the drug, requiring lifelong use, and (2) a significant portion of the weight lost is often unhealthy lean muscle mass.

b.  Defendants made misrepresentations to the public and to Plaintiff by airing the widespread "Oh, Oh, Oh, Ozempic" television commercial, which falsely created a misleading impression of the drug's safety profile. Specifically, the commercial represented a character saying, "No increased risk!" which was an incomplete and misleading statement of safety that tended to assure viewers the drug was completely safe. Furthermore, while the commercial mentioned common gastrointestinal (GI) side effects like nausea and vomiting, it intentionally minimized the risk by failing to clarify the severe, incessant, and debilitating nature of these symptoms. Defendants concealed and omitted all mention of serious adverse events they knew or should have known to be associated with Ozempic use. These omissions created a deceptive net impression intended to induce consumers to request the product.

c.  Defendants' follow-up television commercials, which Plaintiff saw continued the "Oh, Oh, Oh, Ozempic!" brand theme as well as stating "no increased risk" creating a false sense of safety regarding the purchase and use of the GLP-1 RA Product(s).

d.  Defendants made representations to Plaintiff's prescribing physicians through sales representatives, medical websites (like NovoMedlink), and other physician-directed marketing that the most common gastrointestinal side effects, such as nausea and vomiting, were "mild to moderate" in severity and "transient" or of "short duration." These representations were false and misleading as Defendants concealed that these side effects were

often severe, debilitating, and persistent, and that clinical trial data was skewed by the undisclosed use of anti-emetic medications.

11.    Upon information and belief, Plaintiff's prescribing physician justifiably relied on Defendants' misrepresentations to the medical community, including the false claims that gastrointestinal side effects were merely "mild to moderate" and "transient." In parallel, Plaintiff justifiably relied on Defendants' widespread direct-to-consumer advertising, which falsely represented that the drug would help patients both treat diabetes and "lose weight and keep it off." Relying on this false and misleading net impression that Ozempic was a safe, effective, and long-term solution for diabetes and weight management with only minor and temporary side effects, Plaintiff's physician was induced to prescribe the drugs, and Plaintiff was induced to take them.

12.    Had Defendants disclosed the true risks of gastrointestinal injuries, the inadequacy of their safety testing, and the true, qualified nature of the long-term diabetes treatment and/or weight-loss benefits, Plaintiff would not have used the products, and/or Plaintiff's prescribing physician would not have prescribed it.

13.    As a direct and proximate result of Defendants' fraudulent misrepresentation and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in severe and personal injuries, physical pain, mental anguish, diminished enjoyment of life, as well as the need for medical treatment, and other damages, including those set forth in paragraphs 16 to 18 in the Short Form Complaint.

# EXHIBIT B

**UNFAIR TRADE PRACTICES / CONSUMER PROTECTION SUPPLEMENT**

1.      Plaintiff incorporates by reference the factual allegations in *Plaintiffs' Amended Master Long Form Complaint and Demand for Jury Trial* (ECF 481) *("Master Complaint")*, and its paragraphs 850-65 as though set forth fully at length herein.

2.      Plaintiff brings this claim against Defendants identified in paragraph 5 of the Short Form Complaint ("Defendants").

3.      Plaintiff brings this claim under the statute, and relevant subsections, identified in Paragraph 20(a) of the Short Form Complaint (the "Statute").

4.      The Oklahoma Consumer Protection Act ("Oklahoma CSPA" or the "Statute" ) prohibits deceptive, misleading, and unfair trade practices. Okla. Stat. Ann. tit. 15, § 753.

5.      Plaintiff and/or Defendants are "persons" under the Statute.

6.      Plaintiff is a consumer who purchased one or more GLP-1 RA Products for personal, family, and/or household purposes.

7.      Defendants are the suppliers, manufacturers, advertisers, and/or sellers of the GLP-1 RA Products, subject to liability under the Statute for fraudulent, unfair, deceptive, and unconscionable consumer sales practices.

8.      Defendants designed, manufactured, assembled, inspected, tested (or not), packaged, labeled, marketed, advertised, promoted, supplied, distributed, sold and/or otherwise placed the GLP-1 RA Products into the stream of commerce, and therefore owed not only a duty of reasonable care to avoid causing harm to those that consumed it, such as Plaintiff, but also separate and independent statutory duties to be truthful, fair, accurate, and to not mislead or deceive consumers in connection with the sale of GLP-1 RA Products.

9.    Defendants marketed and advertised the GLP-1 RA Products to consumers, physicians, and other healthcare entities in Oklahoma. In addition, Defendants sold the GLP-1 RA Products to residents of Oklahoma; shipped GLP-1 RA Products to Oklahoma; and otherwise engaged in trade or commerce, or conducted business, related to the GLP-1 RA Products in Oklahoma. Defendants' misconduct described herein significantly affected Oklahoma consumers.

10.    As alleged in the Master Complaint, Defendants engaged in unfair competition or unfair, deceptive, misleading, false, fraudulent, or unconscionable acts or practices in violation of the Statute by, among other things:

a.    Misleading consumers regarding the safety risks associated with use of their GLP-1 RA Products and overstating the weight-loss benefits and understating risks from using the GLP-1 RA Products;

b.    Excessively advertising, marketing, and overpromoting their GLP-1 RA Products, including turbo-charging the pre-existing extensive direct-to-consumer marketing campaign with use of telehealth providers and promoting the drugs off-label; and

c.    Failing to disclose that they performed research and testing in a manner that would lead to under-reporting of the severe risks of using the GLP-1 RA Products.

11.    As described in the *Master Complaint*, including in the paragraphs cited in paragraph 856 of the *Master Complaint* as well as paragraphs 447 through 576 of the *Master Complaint*, at all relevant times, Defendants knew or should have known, including from preclinical trials, premarket clinical trials, post-market surveillance, adverse event reports, and published scientific papers, that the GLP-1 RA Products posed serious health risks to users. Despite this knowledge, Defendants continued to mislead consumers by omitting, understating, or downplaying risks associated with use of their GLP-1 RA Products.

12.    As described in the *Master Complaint*, including in paragraphs 577 through 601 of the *Master Complaint*, at all relevant times, Defendants knew or should have known that their

GLP-1 RA Products are not as effective for weight loss as Defendants claimed. Despite espousing significant weight-loss benefits, Defendants knew that the average person loses only a small percentage of their body weight while on GLP-1 RA Products, a significant percentage of patients experience minimal to no weight loss, many people stop taking GLP-1 RA Products relatively quickly, and many people who discontinue use gain back as much as — or more than — the weight they lost while using the GLP-1 RA Products. Despite this knowledge, Defendants continued to mislead consumers by overstating the products' weight-loss benefits.

13.    The information referenced above that Defendants misrepresented, concealed, and did not disclose, was material. A reasonable person, including Plaintiff, would find that information, which was related to their health and well-being, such as the serious adverse health risks associated with the use of the GLP-1 RA Products and the limits of the products' efficacy, to be important when deciding whether to purchase and/or use the GLP-1 RA Products.

14.    Defendants intentionally concealed the foregoing material information from consumers, users, prescribers, physicians, and other health care providers, including Plaintiff and Plaintiff's health care providers, because to do otherwise would have resulted in fewer prescriptions written for, and fewer purchases of, the GLP-1 RA Products.

15.    Defendants violated the Statute by failing to disclose the material health and safety information regarding the GLP-1 RA Products discussed above to consumers, users, physicians, health care providers and others, including Plaintiff and Plaintiff's health care providers, in any of Defendants' marketing and promotional materials, advertising, packaging, labeling, websites, and/or any other public communication.

16.    Defendants violated the Statute by making numerous representations about the weight-loss benefits of taking GLP-1 RA Products while concealing additional information related

to the purported weight-loss benefits from consumers, users, physicians, health care providers and others, including Plaintiff and Plaintiff's health care providers, in any of Defendants' marketing and promotional materials, advertising, packaging, labeling, websites, and/or any other public communication.

17.    Defendants violated the Statute with their advertising tactics. Particularly Defendants' 2018 "Oh, oh, oh, Ozempic!" television commercial wherein an actor states "No increased risks" and viewed by Plaintiff numerous times.

18.    Defendants violated the Statute with their follow-up television commercials which continued the "Oh, Oh, Oh, Ozempic!" brand theme as well as stating "No increased risk" which Plaintiff viewed countless times over a period of years.

19.    Plaintiff, Jason M. Price, was prescribed metformin for treatment of his diabetes. After seeing Defendants' television commercials, Plaintiff, who was and is overweight, approached his physician, about trying Ozempic. Plaintiff's physician prescribed Ozempic and Plaintiff purchased and used Ozempic. Due to the gastrointestinal conditions Plaintiff suffered, including but not limited to abdominal pain, nausea and vomiting, and a small bowel obstruction, Ozempic was discontinued. Thereafter, Plaintiff began to regain weight.

20.    Defendants knew the misrepresentations, omissions and concealment of material safety and efficacy information in the GLP-1 RA Products' packaging, labels, advertisements, promotional materials, websites, and other communications and disclosures rendered them false, deceptive, inadequate, and misleading.

21.    By consistently and pervasively understating the risk and overstating the benefits of taking GLP-1 RA Products, Defendants engaged in unfair, deceptive, and/or fraudulent acts in violation of the statute by, among other things:

a. Making a false representation knowingly or with reason to know, as to the GLP-1 RA Products characteristics, uses, or benefits;

b. Representing, knowingly or with reason to know, that the GLP-1 RA Products are of a particular standard, when they are not;

c. Advertising, knowingly or with reason to know, the GLP-1 RA Products with intent not to sell them as advertised; and

d. Committing an unfair or deceptive practice as defined in Okla Stat. tit. 15 § 752.

Okla. Stat. Ann. tit. 15 § 752, 753(5), (8), (9) (21).

22.     In violation of the Statute, Defendants' conduct described herein constitutes the knowing and willful act, use, or employment of deception, false promise, misrepresentation, and unfair practices, and the concealment, suppression, and omission of material facts in connection with the sale and advertisement of goods, merchandise and/or consumer merchandise (*i.e.*, the GLP-1 RA Products), in trade or commerce, and was done with the intention that consumers such as Plaintiff would rely upon such conduct in purchasing or using the GLP-1 RA Products.

23.     Defendants' conduct was fraudulent and deceptive because the material misrepresentations and omissions had the capacity or tendency to deceive and, in fact, did deceive reasonable consumers, including Plaintiff.

24.     Plaintiff justifiably relied on Defendants' misrepresentations and omissions and if Plaintiff had known the information that Defendants withheld and concealed, Plaintiff would not have purchased or used the GLP-1 RA Products.

25.     As a result of such deceptive packaging, labels, advertisements, promotional materials, websites, and other communications and disclosures, Plaintiff purchased and/or used the GLP-1 RA Products in justifiable and reasonable reliance on Defendants misrepresentations and omissions.  Defendants expected or should have expected reasonable consumers to rely on

these misrepresentation and omissions, in part, because the omitted information directly relates to consumers' health and well-being.

26.     Plaintiff at all times acted as a reasonable consumer in relying upon Defendants' misrepresentations and material omissions concerning Defendants' GLP-1 Products in choosing to purchase and/or consume the GLP-1 RA Products prescribed by their health care provider.

27.     The actions and omissions of Defendants are uncured or incurable.

28.     As alleged above, Defendants had actual knowledge of the defective and dangerous condition of the GLP-1 RA Products and failed to take any action to cure those conditions.

29.     As a direct and proximate result of Defendants' misconduct described herein, Plaintiff has suffered serious injuries, economic and non-economic losses, and other damages, all of which can be calculated with a reasonable degree of certainty using sufficiently definitive and objective evidence, including those set forth in paragraphs 16 to 18 in the Short Form Complaint.

30.     Accordingly, pursuant to the Statute, Plaintiff seeks to recover statutory, exemplary, treble, and/or punitive damages, costs of suit, and attorneys' fees, and equitable relief as appropriate, and all such other relief as the Court deems proper.